IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Harold Estes Blackwell, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> City of Clemson, City of Clemson ) <br> Police Department, Matthew Culbreath, ) <br> and Lilly Davis, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. 8:16-350-JMC-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to approve and file the parties' stipulation of dismissal (doc. 41) and the plaintiff's motions for sanctions and to void settlement agreement (docs. 42, 43). In his complaint, the plaintiff, who is proceeding *pro se*, alleges that the defendants violated his constitutional rights when officers confiscated his firearms when they responded to the plaintiff's residence after being alerted that the plaintiff was attempting suicide (doc. 1).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## FACTS PRESENTED

On July 28, 2016, defense counsel sent the plaintiff an email outlining the following terms of a proposed settlement: the defendants would make a cash payment to the plaintiff of $1500.00; the defendants would "furnish [the plaintiff] a recording of the telephone call the 911 dispatcher made to Anita Blackwell on December 9, 2015," and the plaintiff would sign a release, a stipulation of dismissal of the case, and a receipt

acknowledging receipt of the check and the recorded telephone call (doc. 41-3 at 3-4). In a reply email, the plaintiff stated that he had "absolutely no problem with the terms of your settlement offer" and asked that defense counsel "email the recording of my wife upon the signing of the settlement documents so I don't have to make it digital myself . . ." (*id.* at 2). In an email on July 29, defense counsel asked that the plaintiff "affirmatively say that you agree to settle the case on the terms below before the check can be ordered" (*id.*). The plaintiff stated in an email response that he "agree[d] to settle the case on the terms below. Don't worry. My handshake is better than any contract. You have my handshake. Would appreciate you emailing my wife's call today if you could" (*id.*).

On August 1, 2016, the plaintiff went to the office of defense counsel and reviewed and signed a release and a stipulation of dismissal of this case *with prejudice* (doc. 41-4). The plaintiff was given the settlement funds at that meeting. The recording of the telephone call the 911 dispatcher made to Anita Blackwell on December 9, 2015, was emailed to the plaintiff by defense counsel on August 1, 2016 (doc. 41-5).

On August 2, 2016, the plaintiff sent an email indicating that he believed that there was a missing telephone conversation that had not been provided to him (doc. 41-6). Later on August 2, 2016, the plaintiff sent two emails to defense counsel in which he maintained that he was intoxicated when he signed the settlement documents (doc. 41-7).

On August 3, 2016, the plaintiff emailed defense counsel asserting that there were three telephone calls between his wife and the dispatcher. Defense counsel responded that he had reviewed the calls, and there were only two: The first was a telephone call in which Mrs. Blackwell called the Clemson Police Department to tell them that her estranged husband (the plaintiff) had sent her an e-mail that was in the nature of a suicide letter (doc. 41-9 at 2; *see* doc. 45-2, Culbreath aff. ¶ 7). It was defense counsel's understanding that the plaintiff already had a copy of the recording of that call (doc. 41-9 at 2); the plaintiff acknowledges that he has had a copy of that recording for some time

(doc. 43-7 at 2). The second telephone call was the police dispatcher calling Mrs. Blackwell to tell her that the police located the plaintiff and that he had voluntarily gone to the hospital for an evaluation (doc. 45-2, Culbreath aff. ¶ 8). This telephone call was provided to the plaintiff pursuant to the terms of the settlement agreement on August 1, 2016 (docs. 41-5, 41-9 at 2, 43-7).

However, the plaintiff maintains that there were three telephone calls (doc. 43-7). He stated in a follow-up email to defense counsel, "Okay, so there is a third call between someone else and my wife. Our agreement was for a copy of the follow up call to her reporting my suicide. Now, you provide that and we go our separate ways. You don't, we won't. It is as simple as that from where I'm sitting" (*id.* at 1). Defense counsel then emailed the plaintiff confirming that he had asked the plaintiff to tell him why he thought there were additional telephone calls, but the plaintiff had not done (*id.*). Defense counsel further noted that he had performed all of his duties under the settlement agreement and that he would file his motion to approve and file the parties' stipulation of dismissal the following day (*id.*).

In his motion to void settlement agreement, the plaintiff contends that "he was intentionally mislead [sic] and tricked into signing an agreement he had not made" (doc. 43-1 at 1). He further argues that the defendants "sought to take advantage of [his] pro se status and naivety in accepting opposing counsel's representations as though he were acting ethically . . . . " (*id.*). The plaintiff contends that the defendants "never indicated . . . they were only willing to provide one telephone call. Settlement discussions were always centered around Plaintiff receiving a record of the call referenced in the dispatcher and Plaintiff's wife on her call to report Plaintiff's suicide" (*id.* at 2). The plaintiff states that he "immediately notified opposing counsel he was impaired at the signing of the documents once it was clear he had been duped" (*id.* at 3). In his motion for sanctions, the plaintiff contends that defense counsel "has demonstrated a proclivity for being dishonest and a

3

bully" and asks that the court award "award Plaintiff $1,500 and force Defendants to immediately provide Plaintiff with all the recordings of his wife available to Defendants" (doc. 42 at 1-2).

The defendants have presented the affidavit of defendant Matthew Culbreath, who is a Captain in the City of Clemson Police Department (doc. 45-2, Culbreath aff.). According to Captain Culbreath, he reviewed the audio files preserving telephone conversations concerning the incident at issue in this case. Captain Culbreath states that there were only two telephone calls, as described above (*id.* ¶¶ 7-9).

The defendants also submitted the affidavit of an employee of defense counsel's firm who states that he was approximately two feet from the plaintiff when the release was executed, and he did see any sign that the plaintiff was impaired by alcohol and noticed no odor of alcohol on the plaintiff (doc. 45-6, Breen aff. ¶ 4).

## APPLICABLE LAW AND ANALYSIS

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir.2002). In order to exercise this inherent power, "a district court (1) must find that the parties reached a complete settlement agreement and (2) must be able to determine its terms and conditions ." *Id.* at 540–41. If there is no dispute that a settlement has been reached and its terms and conditions can be determined, the court may summarily enforce the agreement without a plenary hearing. *Id.* at 540.

Here, the terms of the settlement agreed to by the parties can easily be determined, and it is clear that the defendants have performed all of their duties under the agreement. There is no dispute that the defendants have provided the plaintiff with the "recording of the telephone call the 911 dispatcher made to Anita Blackwell on December 9, 2015," which is the only telephone call referenced in the terms of the settlement agreement (*see* doc. 41-3). After the settlement documents were executed and all of the

settlement terms were fulfilled, the plaintiff began attempting to back out of the settlement. That has taken the form of claiming that he was intoxicated at the time of the execution of the settlement documents and in claiming that he has not been provided recordings of a telephone conversation that the defendants have shown does not exist. The plaintiff has provided no evidence supporting either claim, and he has further failed to provide any basis for this court to sanction the defendants. "'[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement.'" *Hensley*, 277 F.3d at 540 (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir.1997)).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion to approve and file the parties' stipulation of dismissal (doc. 41) should be granted, and the plaintiff's motions for sanctions (doc. 42) and to void settlement agreement (doc. 43) should be denied. Should the district court adopt this recommendation, the plaintiff's motion to compel (doc. 49) will be rendered moot.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

September 9, 2016
Greenville, South Carolina

5